**SIGNED this 18th day of March, 2011.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAMP ARROWHEAD, LTD. | ) | Case No. 09-54693-LMC |
| | ) | |
| | ) | |
| Debtor | ) | |

**MEMORANDUM DECISION ON COOLWATER LLC'S MOTION FOR RECONSIDERATION OF THE ORDER CONFIRMING DEBTOR'S AMENDED CHAPTER 11 PLAN OF LIQUIDATION PURSUANT TO RULE 9023 OF THE RULES OF BANKRUPTCY <u>PROCEDURE OR, IN THE ALTERNATIVE, FOR NEW TRIAL</u>**

This decision addresses a motion by Coolwater, LLC, asking this court to reconsider its order confirming the plan of liquidation proposed by Camp Arrowhead, Ltd.'s (the "Debtor"). Most narrowly, the motion is actually one seeking to alter or amend judgment, pursuant to Rule 59 of the Federal Rules of Civil Procedure, made applicable in bankruptcy matters by Rule 9023 of the Federal Rules of Bankruptcy Procedure. More broadly, this pleading is but a continuation of Coolwater's continuing desire to litigate matters surrounding the sale of the Debtor's real property, a large parcel of property in the Texas Hill Country long once used as a summer camp for girls. Early on in this case, over Coolwater's strenuous objection, this court granted the Debtor's request to sell its primary asset – approximately 650 acres of real property located in Hunt County, Texas (the "Property"). Coolwater unsuccessfully appealed this court's decision allowing the Debtor to sell the Property. Additionally, Coolwater unsuccessfully appealed this court's ruling denying Coolwater's motion to dismiss this bankruptcy case.

1

After the sale was consummated, the Debtor filed a disclosure statement and liquidating plan. Coolwater did not object to either the Disclosure Statement or the Plan, and, on May 21, 2010, the court confirmed the Debtor's Plan. On May 28, 2010, Coolwater filed this Motion Pursuant to Federal Rule of Bankruptcy Procedure 9023 of the Federal Rules of Bankruptcy Procedure to Amend Order Confirming Debtor's First Amended Plan of Reorganization; or, in the Alternative, for New Trial (the "Motion to Reconsider"). In the Motion to Reconsider, Coolwater asks the court to reconsider its Confirmation Order claiming that the order (and the plan) contain a third-party injunction that should be stricken, either as a matter of law or as a matter of equity. The matter was heard by the court on July 14, 2010 (the "July Hearing"), at the conclusion of which the court ordered additional briefing. After consideration of the papers filed in advance of the July Hearing, the oral arguments made at the July Hearing, and the additional briefing submitted by the Debtor and Coolwater, and for the reasons stated below, the court now enters this Memorandum Decision.

A. **Background Facts**

The dispute between Coolwater and the Debtor originated well before this bankruptcy filing. The Motion to Reconsider cannot be considered in a vacuum, and, as we shall see below, is intricately related to the sale of the Debtor's Property. A somewhat detailed review of the background is necessary. The court cautions that the following summary is provided for the convenience of all concerned, and should not be construed as either binding findings of fact or conclusions of law by any court. The summary is drawn in considerable part from a Joint Statement of Undisputed Facts as stipulated by the debtor and Coolwater, submitted in conjunction with a hearing held early on in this case.[1]

On April 15, 2009, the Debtor (through its agents) informed Coolwater (through its agent) that it would accept an offer by Coolwater to purchase the Property for $6.5 million. *Joint Statement*, at ¶ 14. However, on April 18, 2009, instead of Coolwater submitting an offer to the Debtor, the Debtor delivered a signed offer to Coolwater titled 'Agricultural Land Earnest Money Contract' (the "Coolwater Offer"). *Id.* at ¶ 16. Two days later, on April 20, 2009, Glenn A. Youngkin and Suzanne S. Youngkin offered to buy the Property from the Debtor for $6.75 million (the "Youngkin Offer"). *Id.* ¶ 17. Pursuant to the terms of Youngkin Offer, the Youngkins immediately deposited $150,000 in earnest money with an escrow agent, who acknowledged receipt of the deposit on that same day, April 20, 2009. *Id.* at ¶ 17. That same day, the Debtor sent notice to Coolwater that it was withdrawing and revoking the Coolwater Offer. *Id.* at ¶ 18. Later on in the day[2] on April 20, in compliance with the Coolwater Offer, Coolwater also deposited $20,000 in earnest money with a title company, and instructed the title company to

---

[1] In advance of the January 2010 hearing on the Sale Motion and Coolwater's motion to dismiss, the parties filed a JOINT STATEMENT OF UNDISPUTED FACTS, AS STIPULATED BY CAMP ARROWHEAD, LTD. AND COOLWATER, LLC, RELATING TO MATTERS SCHEDULED FOR HEARING ON JANUARY 6, 2010 [DOCUMENT NOS. 9 & 12] [Docket No. 37].

[2] Pursuant to the Joint Statement, the exact timing of the various events that took place on April 20, 2009 is in dispute. For this reason, the court will not describe the times here.

deliver $100 of the earnest money to the Debtor. *Id.* ¶ 19. On April 24, 2009, Coolwater sued the Debtor in state court over the revocation of the Coolwater Offer. That litigation was still pending when the bankruptcy was filed. *Id.* ¶ 20.

On November 30, 2009, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Soon after, on December 8, 2009, the Debtor filed a motion to sell substantially all of its assets pursuant to 11 U.S.C. § 363 (the "Sale Motion") [Docket No. 9]. In particular, the Sale Motion sought permission to sell the Property to the Youngkins, as well as to assume an executory contract -- the Youngkin Offer. Coolwater immediately responded by filing not only an objection to the Sale Motion [Docket No. 26] but also a motion to dismiss the bankruptcy case on grounds that the case was filed in bad faith [Docket No. 11]. Needless to say, the Debtor objected to the dismissal of this case [Docket No. 28]. Ultimately, the court held a hearing on January 6, 2010, at which time the court denied Coolwater's motion to dismiss the case and granted the Sale Motion (the "Sale Order") [Docket No. 48]. Coolwater appealed both determinations to the District Court, and on April 20, 2010, but the District Court ruled against Coolwater on both accounts [Docket Nos. 106-107]. At this juncture, the Sale Order is a final, unappealeable order.

Some discussion of the Sale Order is relevant here. The Sale Order authorized the Debtor to sell the Property for $6.575 million to Glenn A. Youngkin and Suzanne S. Youngkin (together, the "Youngkins"), or their assignee, P&O Ranch, LLC. *Sale Order*, ¶ F. Additionally, the Sale Order provided:

> Except as otherwise provided by the Sales Contract or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, tort claimants, litigants, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or the Sale, are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, their successors or assigns, their property, or the Property, such persons' or entities' Interests.

*Sale Order*, ¶ 9 at 8. 'Purchasers' was defined in the Sale Order as Glenn A. Youngkin, Suzanne S. Youngkin, and their assignee, P&O Ranch, LLC. *Id.* ¶ F. Thus, the Sale Order, which is now a final order, specifically forbade third parties, including Coolwater, from suing the Purchasers for anything arising out of, or in connection with, the sale of the Property.

On March 1, 2010, after the sale but before the District Court's ruling on Coolwater's appeal of the Sale Order, the Debtor filed its Disclosure Statement and Plan of Liquidation [Docket Nos. 93 and 94]. On March 4, 2010, the clerk's office sent notice scheduling a hearing on the Disclosure Statement for May 5, 2010 [Docket No. 96]. Counsel for Coolwater had the

opportunity to review both the Disclosure Statement and Plan via the clerk's electronic filing system, which generates an email notification to all registered filers involved in the case whenever a new pleading in the case is filed. That same notification system also alerted Coolwater's counsel of the hearing setting. On April 22, 2010, the debtor filed a motion for a hearing on the Disclosure Statement and Plan [Docket No. 104]. Coolwater's counsel was served with a copy of this motion. On April 28, 2010, the debtor filed a motion to shorten the time to confirm the Plan [Docket No. 109]. Coolwater's counsel was served with a copy of this request. On May 5, 2010, the court held a hearing on the Disclosure Statement. The only objection was filed by P&O Ranch LLC.[3] Coolwater filed no objections.

The Disclosure Statement and Plan were amended on May 6, 2010 pursuant to the Debtor's resolution of P&O Ranch's objection and, on May 7, 2010, the debtor mailed out notice of the date of the confirmation hearing (the "Notice"). The Notice also gave an objection deadline. Needless to say, the Notice was served on Coolwater's counsel. Coolwater did not object to the Plan. Coolwater had filed a proof of claim and, on May 20, 2010, the debtor filed an objection to that claim. That same day, the debtor circulated to all interested parties, including Coolwater's counsel, a copy of the proposed form of confirmation order. After an uncontested confirmation hearing, on May 21, 2010, the court entered the order Confirming Amended Chapter 11 Plan of Liquidation for Camp Arrowhead, Ltd., together with Findings of Facts and Conclusions of Law in Support Thereof (the "Confirmation Order"). On May 28, 2010, Coolwater filed its Motion to Reconsider, which, in essence, for the first time raises Coolwater's objections to aspects of the Plan.[4]

Only one paragraph of the Debtor's Plan offends Coolwater: Article IX, ¶ E(3), which is referenced in paragraph 8 of the Confirmation Order. *Confirmation Order*, ¶ 8 at 10.  Article IX is titled 'Effect of Confirmation,' Paragraph E is titled 'Injunction,' and sub-paragraph 3, titled 'Creditor Injunction,' provides:

> Subject to the other terms of, and except as provided by or in, the Plan or the Confirmation Order, effective as of and upon the occurrence of the Effective Date, the Confirmation Order shall constitute and provide for an injunction by the Bankruptcy Court as of the Effective Date against any Holder of a Claim from commencing or continuing any action or proceeding against the Debtor, the Plan Agent, any Partner and the Purchaser.

*Plan*, Art. IX, ¶ 3(E) (the "Injunction Paragraph"). Unremarkably, the Injunction Paragraph refers to terms that have been defined in the Plan, including, in relevant part, 'Holder,' 'Claim,'

---

[3] P&O Ranch LLC is a Texas Limited Liability Company owned and managed by the Youngkins.  As noted above, P&O bought the Property owned by the debtor in this case.  *P&O Obj.*, at 1.

[4] As plan objections, of course, the arguments are untimely and could be disregarded *vel non*. It is for this reason that Coolwater must first satisfy the court of the legitimacy of raising these issues at this late stage under the standards for consideration of motions to alter or amend judgments under Rule 59. These arguments are taken up later in this decision.

'Partner,' and 'Purchaser.' In alphabetical order, the Plan defines those terms as follows: 'Claim' means claim as defined under § 101(5), *Plan*, Art. I, ¶ A(15), and 'Holder' means the "holder of a Claim, or interest in, the Debtor." *Id.* ¶ A(38). 'Partner' is defined as either a Limited Partner or General Partner, and, in turn, 'Limited Partner' includes "any limited partner of the Debtor, including but not limited to, Robert Bartell, Kathleen Bartell Martin and Mark Bartell." *Id.* ¶¶ A (44), (40). 'General Partner' means "Ewing Gillis, LLC, a Texas limited liability company." *Id.* ¶ A(36). Lastly, 'Purchaser' (or Purchasers) is defined as "Glenn A. Youngkin and Suzanne S. Youngkin, and their assignee, P&O Ranch, LLC (collectively, the 'Youngkins'), in their capacity as purchasers of the Property, as approved under the Sale Order." *Id.* ¶ A(56). Notably, in an agreed order submitted by the parties and entered by the court on July 14, 2010 [Docket No. 145], the Debtor and Coolwater agreed that Coolwater would withdraw its proof of claim in return for the Debtor's agreement that Coolwater be repaid the $20,000 in earnest money it had deposited (pursuant to the Coolwater Offer) prior to the bankruptcy. Thus, a fair reading of the Injunction Paragraph is that Coolwater is precluded from suing (i) the Debtor, (ii) the Youngkins and their assignee, P&O Ranch, and (iii) Robert Bartell, Kathleen Bartell Martin, Mark Bartell, and Ewing Gillis, LLC. In its Motion to Reconsider, Coolwater objects to the Injunction Paragraph and argues that it goes beyond what is allowed in the Fifth Circuit with respect to third-party injunctions.

The court held a hearing on the Motion to Reconsider on July 14, and heard arguments from both the Debtor and P&O Ranch on the one hand, and from Coolwater on the other. After the conclusion of the July Hearing, the court informed the parties that it needed additional briefing on certain issues and gave them until July 23, 2010 to file supplemental papers. Both Coolwater (the "Coolwater Supplemental Brief") [Docket No. 150] and the Debtor (the "Debtor Supplemental Brief") [Docket No. 149] filed additional briefs in support of their respective positions. The court instructed the parties to address the following issues: (i) the legal standards for Rule 59, especially when dealing with a motion to reconsider the court's subject matter jurisdiction, (ii) Fifth Circuit law on third-party injunctions in plans of reorganization and/or liquidation, and (iii) Fifth Circuit law on what constitutes 'consent' to a third-party injunction. *July 14, 2010 Transcript*, at 30-31, 33, 66-67.

B. **The Pleadings**

*Coolwater's Pleadings*

The Motion to Reconsider was, in point of fact, an untimely Plan objection, and did not address any of the Rule 59 requirements. However, Coolwater's additional brief did address Rule 59 on a general basis as follows. First, Coolwater quotes the standard guidelines for considering a Rule 59 motion articulated by the Fifth Circuit:

> In deciding a Rule 59(e) motion the district court should consider the following non-inclusive factors: '(1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was

available to plaintiffs before they responded to the summary judgment motion, and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened.'

*Coolwater Supp. Brief*, at 2 (quoting *Sturges v. Moore*, 73 Fed. App. 777, 778 (5th Cir. 2003)). Coolwater asserts that a "manifest error of law" is also grounds for granting a Rule 59 motion. A "manifest error of law," says Coolwater, means "an error that is plain and indisputable and that amounts to a complete disregard of the controlling law" (citing In *re Oak Park Calabasas Condo. Assn.*, 302 B.R. 682, 683 (C.D. Calif. 2003)) and as "an error in judgment or order which is direct, obvious and observable." *Id.* Coolwater believes that the Confirmation Order and Plan contain both a manifest error of law and work a manifest injustice, such that relief under Rule 59 is warranted.

To support its contention of "manifest error of law," Coolwater asserts that the Injunction Paragraph violates Fifth Circuit precedent and, consequently, must be stricken from the Plan. First, Coolwater asserts that bankruptcy courts do not have the "*jurisdiction* to enjoin third parties against subsequent civil actions against non-debtor third parties." *Mot. to Reconsider*, at 2 (citations omitted and emphasis supplied). In support of this broad statement, Coolwater references *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 87, 102 S. Ct. 2858, 2880 (1982), the various statutory bankruptcy amendments of 1984, and, on a broad level, 'related to' jurisdiction, citing to *Celotex Corp.*, 514 U.S. 300 (1995). *Id.*, at 2-3. Coolwater then backtracks a little bit (apparently admitting that in certain circumstances bankruptcy courts can, after all, enter third-party injunctions) by referring to the Second Circuit's decision in *In re Johns-Manville*, 517 F.3d 52, 66 (2d Cir. 2008), which, according to Coolwater, stands for the proposition that the "bankruptcy court's jurisdiction can only extend 'to enjoin non-debtor claims that ***directly affect*** the *res* of the bankruptcy estate and does not extend to a claim based on alleged misconduct asserted under state law." *Mot. to Reconsider*, at 3 (citing to *In re Johns-Manville*, 517 F.3d 52, 66 (2d Cir. 2008)). Coolwater then asserts that "[t]he Supreme Court in *Travelers* agrees with this holding." *Id.* (citing *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2203-2204 (2009)).

Second, Coolwater argues that the Injunction Paragraph is prohibited by § 524(e) of the Bankruptcy Code. *Mot. to Reconsider*, at 3-4. For support, Coolwater cites to *In re American Hardwoods Inc.*, 885 F.2d 621, 626 (9th Cir. 1989) which said (in part) "[w]e therefore conclude that the specific provisions of Section 524 displace the court's equitable powers under Section 105 to order the permanent relief sought by American." Moreover, Coolwater notes that the "recent" amendments to § 524, which added § 524(g), are evidence that channeling injunctions are only appropriate in mass tort cases. *Mot. to Reconsider*, at 4 (citing to *In re Lowencschuss*, 67 F.3d 1394, 1401-1402 (9th Cir. 1995)). Lastly on this point, Coolwater asserts that the Fifth Circuit supports this reading. Coolwater points the court to *In re Pacific Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009):

> We see little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization. In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties. *See, e.g., In re Coho Resources, Inc.*, 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.*, 105 F. 3d 225, 229 (5th Cir. 1997; *Matter of Edgeworth*, 993 F. 2d 51, 53-54 (5th Cir. 1993); *Feld v. Zale Corporation*, 62 F. 3d 746 (5th Cir. 1995). These cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions.

*Id.* at 5. For these reasons, Coolwater believes that the Injunction Paragraph should be removed from the Plan.

Coolwater adds in its Supplemental Brief that, under *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), the Injunction Paragraph is simply not appropriate in this circuit. *Coolwater Supp. Brief*, at 4-5. Coolwater points the court to other Fifth Circuit cases, and one Third Circuit case, that have upheld the *Zale* rule, and again refers to the language in the *In re Pacific Lumber* case cited in the immediately preceding paragraph. *Id.* at 5-6 (citations omitted).

Third, Coolwater asserts that the Injunction Paragraph "violates the [Code's] carefully structured jurisdictional scheme." *Mot. to Reconsider*, at 5. Coolwater argues that the injunction

> is clearly neither within the 'core' jurisdiction of the bankruptcy court nor has Coolwater consented to the injunction. The proposed injunction impermissibly attempts to limit the rights of creditors such as Coolwater who may have state law claims against the partners of the Debtor or the purchasers. There is no conceivable affect that such claims could have against the bankruptcy estate.

*Id.*, at 6. Not only does Coolwater believe the injunction is outside the court's jurisdiction, but also that it is against public policy because it allows the Partners and the Purchasers to hide behind the protections of the bankruptcy code without having filed for bankruptcy. *Id.* Moreover, Coolwater suggests that because the Plan is one of liquidation as opposed to reorganization, this case is not analogous to cases in which courts approve third party injunctions as to non-debtors when the non-debtors are so essential to the reorganization that their actions allow the reorganization to be completed. *Id.* In other words, the Plan's injunction here does not help the Debtor in any relevant way. *Id.*

Fourth, Coolwater asserts that it did not consent to the injunction. The injunction was "(1) neither clear on its face or [sic] conspicuous in the document, (2) was not discussed or mentioned in the Disclosure Statement and (3) was not discovered by counsel until after the confirmation hearing." *Id.* at 6-7. "Lacking knowledge of its existence, Coolwater cannot be charged with knowing consent." *Id.* at 7. Moreover, Coolwater asserts that since subject matter jurisdiction can be raised by any party at any time, its objection at this juncture is both appropriate and timely.

Lastly, Coolwater says that there was no evidentiary basis for approving the injunction. *Id.* at 7-8.

In Coolwater's supplemental brief, Coolwater claims that "[t]o establish consent, waiver or abandonment of rights there must be proof of intent to relinquish a known right. Consent must be an affirmative act." *Coolwater Supp. Brief*, at 7 (citations omitted). Coolwater believes that, in this case, there is simply no evidence to support a finding that it consented to the Injunction Paragraph: it did not submit a ballot in favor of the Plan, nor did it take any other affirmative action that would indicate affirmative consent. *Id.* at 8. Indeed, Coolwater notes that the only affirmative actions it took in this case were to ask that the case be dismissed, object to the sale of the Property, and file the Motion to Reconsider. *Id.* Along these lines, Coolwater argues that even though it failed to file an objection to the Plan, it was the duty of the court to police the terms of the Plan and to "strike provisions which are in direct conflict with Bankruptcy Code provisions." *Id.* at 8 (citing *In re Francisco Espinosa*, 130 S.Ct. 1367, 1376 (2010)). For all these reasons, Coolwater asks that, pursuant to Rule 59, the court reconsider the Confirmation Order and either (i) amend the Confirmation Order to remove the Injunction Paragraph from the Plan or (ii) grant a new trial to consider the propriety of including the Injunction Paragraph.

Coolwater's supplemental brief raises a new argument as well. Coolwater asserts that the Debtor has no interest in any dispute that may exist between Coolwater and the partners of the Debtor. *Coolwater Supp. Brief*, at 3. "The partners neither contributed to the reorganization process nor could they have relied on the proposed permanent injunction which was proposed after the sale motion was filed, approved by the Court, and the sale completed." *Id.* at 3-4. Consequently, Coolwater does not believe that the Debtor will be prejudiced if the court strikes the Injunction Paragraph from the Plan. *Id.*

### The Debtor and P&O Ranch's Pleadings

In advance of the July Hearing, both the Debtor and P&O Ranch filed objections to Coolwater's Motion to Reconsider. In the Debtor's Objection, the Debtor first notes that

> [n]owhere in its Motion to [Reconsider] does Coolwater state that it did not have a copy of the Plan. Instead, Coolwater states that it did not object because it did not see the language enjoining creditors from bringing actions against the Partners and P&O Ranch. Specifically, it complains that the language was not conspicuous. Nowhere in the Motion to Amend does Coolwater state what actions it believes that it is enjoined from bringing, or that it might want to bring against the Partners and/or P&O Ranch. Thus, it is not clear why Coolwater would not consent to such language, or at a minimum take no position as to the language.

*Debtor Obj.*, at 3. Based on Coolwater's actions in this bankruptcy case, the Debtor describes the Motion to Reconsider as a disguised collateral attack on the <u>Sale Order</u>, which, as noted above, contained its own language enjoining lawsuits against the Purchasers. Indeed, because

Coolwater allegedly tried to assert in its appeal of the Sale Order that P&O Ranch was a bad faith purchaser, *Id.* at 4, the Debtor (as well as the Purchasers and the Partners) are all concerned that Coolwater will try and sue the Partners and/or P&O Ranch. *Id.* The Debtor states that such a lawsuit would be a collateral attack on the Sale Order, and could delay the distribution of the sale proceeds, which, in turn, would delay implementation of the Plan. *Id.* The Debtor also notes that when the Plan was confirmed, the District Court's order dismissing Coolwater's appeal was not yet final, and the Plan accordingly holds back the majority of the sale proceeds until the appeal is final. *Id.* at 5. At this juncture, the District Court's order is now final and the Plan's injunction language "provides additional assurance to the parties that Coolwater or some other creditor cannot attempt to make an end run around the orders now in place. Without this certainty, P&O and the Partners have no certainty." *Id.*

The Debtor then distinguishes this case from the *Pacific Lumber* case. The Debtor argues that, here,

> you have a party creditor who would not accept the return of the funds it deposited with a title company after the sale closed, that has vigorously litigated with the Debtor throughout the case, and is now complaining about an injunction which may be necessary to prevent it from commencing actions against the non-debtor parties, which actions in turn may delay implementation of the Plan. See generally, *In re The Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009). Coolwater had its opportunity to object to the Plan and failed to do so. Coolwater received the Plan, read it, and did not object. Thus, it has not only consented to the injunction, but has waived its right to now attempt to interfere with implementation of the Plan.

*Id.* at 5-6. For all these reasons, the Debtor asks that the court deny the Motion to Reconsider.

In its supplemental brief the debtor argues that Coolwater lacks standing to even file the Motion to Reconsider. *Debtor Supp. Brief*, at 6-10. Coolwater, as an unsuccessful purchaser of the Property without a real claim to pursue, simply lacks Article III standing because it lacks the financial stake in this case to file the Motion to Reconsider. *Id.* at 6-7 ("'Only a person aggrieved has standing to appeal an order of the bankruptcy court.' 'Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding.'"). Moreover, because Coolwater failed to appear at the confirmation hearing, or even to object to the Plan, it also lacks *bankruptcy* standing to file the Motion to Reconsider. *Id.* at 7 (citing to *In re Ray*, 597 F.3d 870, 874 (7th Cir. 2010)).

As for Rule 59 standards, the Debtor argues that it is inappropriate for a party to argue a position it could have, and should have, raised at the initial hearing. *Id.* at 8 ("[I]n pointing out the court's error, however, '[i]t is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.'" (citing, *inter alia*, to *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)). In other words, Rule 59

does not provide a party the opportunity to take a 'second bite at the apple.' *Id.* at 9 (citations omitted). Lastly, the Debtor notes that reconsideration of an order under Rule 59 is an extraordinary remedy that should be used sparingly, and "should not be used to reassert arguments, theories and evidence previously rejected by the court. Nor may it be used to raise *new* arguments, theories or defenses that they could have raised prior to judgment but did not. The rule is 'aimed at reconsideration, not initial consideration.'" *Id.* at 9 (citations omitted). In this case, Coolwater should not be allowed to bring up arguments that it could have raised at the confirmation hearing.

> It is undisputed that (1) Coolwater had notice of the Plan, (2) Coolwater had notice of the hearing on plan confirmation, (3) Coolwater had notice of the deadline to file any objection to confirmation of the Plan, and (4) Coolwater's counsel read the plan before the hearing on plan confirmation (this fact was admitted in the hearing on Coolwater's Rule 9023 Motion). … The inescapable conclusion is this: At best, Coolwater or its counsel did not read the Plan; or, at worst, Coolwater or its counsel did read that Plan but made a conscious decision not to say anything about it until after the hearing on confirmation, which hearing Coolwater elected not to attend. FRCP 59(e) addresses neither Coolwater's inexcusable neglect nor its litigation tactics. It had every opportunity to object to the clear provisions of the Plan. It failed to do so, and the merits of its concerns cannot now be addressed through a motion under FRCP 59(e). Accordingly, the Court should deny the Motion, as Coolwater has waived its right to object to specific terms of the Plan, having received proper notice of the Plan, the relevant terms thereof, the Disclosure Statement, the relevant deadlines for objections and the hearing on the confirmation of the Plan.

*Id.*, at 10-11. For these reasons, the Debtor believes that it is inappropriate for the court to reconsider its Confirmation Order.

Additionally, as instructed by the court, the Debtor addresses the issue of consent. The Debtor argues that Coolwater's failure to object to the Plan constitutes its consent to the Injunction Paragraph. *Id.* at 11. The Debtor cites for support to *Republic Supply v. Shoaf*, 815 F. 2d 1046 (5th Cir. 1987) for the proposition that Coolwater is now bound by *res judicata* to the terms of the Plan. Says the Debtor

> The key question in *Shoaf* was the question of consent, and the court of appeals concluded that a creditor who failed to object to a specific release of guarantor liability was deemed to consent to such a clear term of the plan. As in *Shoaf*, Coolwater is deemed to have consented to the clear, unambiguous provisions of the Plan.

*Id.* at 11. Ultimately, the Debtor believes that Coolwater is estopped from arguing that it did not consent to the Injunction Paragraph. *Id.* at 12. To rule otherwise would be giving Coolwater a

"'second bite at the apple' which its lack of bankruptcy standing denies to it." *Id.* (citing *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004)).

Lastly, the Debtor addresses the merits of Coolwater's objection. *Debtor Supp. Brief*, at 13-16. It appears to the court that the Debtor believes that the Injunction Paragraph in the Plan and the Confirmation Order do comply with Fifth Circuit precedent because the releases preclude Coolwater from pursuing estate causes of action that have been discharged. *Id.* at 14, 16. The Debtor goes on to say that "[w]hat Coolwater really seeks is this Court's interpretation of the Plan and Confirmation Order in a manner that allows Coolwater to pursue unasserted claims against principals of the Debtor." *Id.* at 14. This, the Debtor argues, the court should not, and could not, do. *Id.* at 14-16. For these reasons, the Debtor asks that you deny Coolwater's request on the merits.

As noted above, P&O Ranch did not file a supplemental brief after the July Hearing. However, P&O Ranch did file an objection to the Motion to Reconsider (the "P&O Objection"), in which it makes the following arguments. P&O first adopts the Debtor's arguments. Additionally, P&O states its belief that Coolwater is collaterally attacking the Sale Order. *P&O Obj.*, at 1-2. The District Court dismissed Coolwater's appeal on April 21, 2010. *Id.* at 2. P&O then points the court to additional relevant language contained in the Sale Order:

> a. for the assumption of the Sale Contract between the Debtor and the Youngkins/ P&O Ranch, for the rejection of the alleged contract between the Debtor and Coolwater, LLC, and that any damages arising from such rejection will be treated in a plan;
> b. for the assignment and transfer of the Camp Arrowhead Property 'free and clear of all Interests of any kind or nature whatsoever, except as otherwise set forth in this Order;'
> c. that the purchaser would 'not have any successor, derivative or vicarious liabilities of any kind or character….;' and,
> d. that '[e]xcept as otherwise provided by the Sales Contract or this Order, all persons and entities, including, but not limited to all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, tort claimants, litigants, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or the Sale are forever barred, stopped, and permanently enjoined from asserting against the Purchasers, their successor or assigns, their property, or the Property, such persons' or entities' interests.'

*Id.*, at 2-3. "Coolwater appealed from the Final Sale Order but expressed no objection to the injunction in the Final Sale Order." *Id.* at 3. However, in its appeal (as also noted by the Debtor),

Coolwater did attack P&O's and the Youngkin's good faith. *Id.* P&O asserts that the Plan is a premised upon the finality of the Sale Order and the Purchasers' purchase of the Debtor's property free and clear of Coolwater. Ultimately, P&O believes that Coolwater confuses the real issue:

> The injunction language of the First Amended Plan of Reorganization and this Court's 'Order Confirming the First Amended Plan of Reorganization' (the 'Confirmation Order') neither contravenes section 524(e) of the Bankruptcy Code nor is it beyond the jurisdiction of this Court. The injunction language is consistent with the Final Sale Order, recognizes the critical nature of the sale to the reorganization process, and is consistent with this Court's authority to grant relief under section 363(b) and (f) of Bankruptcy Code.

*P&O Obj.*, at 3. P&O notes that a similar injunction – contained in an order approving a sale of assets under § 363 – was recently approved by Judge Gerber in the GM case, where he enjoined post-closing *in personam* products liability claims. *Id.* at 4 (citing *In re Motors Liquidation Co.*, 2010 U.S. Dist. LEXIS 37794 (S.D.N.Y., April 13, 2010)). Moreover, the Fifth Circuit, although admittedly a circuit that is reluctant to approve non-debtor third party injunctions in plans, "is not reluctant to enjoin third party litigants when their actions contravene and collaterally attack an approved sale 'free and clear' of interests." *Id.* at 4 (citing *Regions Bank of Louisiana, et. al. v. Mary Anna Rivet, et. al.*, 224 F.3d 483 (5th Cir. 2000) *cert. denied*, 531 U.S. 1126 (2001)). This case is distinguishable from *Pacific Lumber* and *Zale* in that the issues here have been fully litigated in the context of § 363(f) and Coolwater's ensuing appeal of the sale, which it lost. *Id.* at 4-5. For these reasons, P&O asks that you deny the Motion to Reconsider.

## C. **Legal Standards and Application To Facts**

### *Reconsideration of the Confirmation Order*

Federal Rule 59(e), made applicable in bankruptcies via Federal Rule of Bankruptcy Procedure 9023, allows parties to seek reconsideration of court orders by filing and serving a written motion within 14 days of the order. See Fed. R. Civ. P. 59; Fed. R. Bankr. P. 9023. "Reconsideration is an 'extraordinary remedy' that courts should use 'sparingly.'" *Shaw v. Hardberger*, 2010 U.S. Dist. LEXIS 3267, at *4 (W.D. Tex. Jan. 15, 2010) (citation omitted). A court may amend or alter a previous judgment or order only when the movant clearly establishes some manifest error of law or fact justifying such an amendment. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (*citing Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd by* 735 F.2d 1367 (7th Cir. 1984)). In a recent case, the District Court for the Western District of Texas outlined the legal standards for the determination of a Rule 59 (e) request as follows:

> To prevail on a Rule 59(e) motion, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not

previously available; or (3) the need to correct a clear or manifest error of law or fact or to prevent manifest injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). 'A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)).

*Shaw v. Hardberger*, 2010 U.S. Dist. LEXIS 3267, at *4-5.

In Rule 59(e) motions, the movant bears the burden of establishing the manifest error in the order and cannot raise arguments which could have, and should have, been argued before the order was entered. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (citations omitted). In other words, in pointing out the court's error, "[i]t is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (Posner, J.). Rule 59 does not exist to give a movant a "second bite at the apple." *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) ("It is well-settled that Rule 59 is not a vehicle for re-litigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'—and we in no way depart from that basic principle."). Notably, however, "[a] district court has considerable discretion to grant or to deny a motion under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). The court must 'strike the proper balance' between the need for finality and 'the need to render just decisions on the basis of all the facts.'" *Shaw v. Hardberger*, 2010 U.S. Dist. LEXIS 3267, at *4.

Before discussing the Motion to Reconsider, it is worth noting that Coolwater did not seek to stay consummation of the Plan. This fact led to some discussion at the July Hearing over whether the issues Coolwater seeks to have relitigated in the Motion to Reconsider are equitably moot. However, this concern was foreclosed in *In re Pacific Lumber Co.*, 584 F.3d 229, 251-252 (5th Cir. 2009), where Chief Judge Jones held that an appeal of a plan of reorganization on the basis that it contains improper third-party injunctions is not equitably moot. Therefore, the Motion to Reconsider is not precluded on that ground.

At first glance, it would seem to be perfectly within the court's discretion to deny Coolwater's Motion for Reconsideration because the bases for Coolwater's requests are clearly ones it could have – and, the court notes, should have – made at the confirmation hearing. However, objections to third party injunctions in this circuit are based, at least in part, on the bankruptcy court's subject matter jurisdiction, which can be raised at <u>any time</u>. *See Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585 (5th Cir. Tex. 1999). Even if Coolwater had missed the 14-day deadline to file a motion under Rule 59, Rule 60(b)(4) still allows a court to reconsider an order based on lack of subject matter jurisdiction. *See e.g., Eglinton v. Loyer (In*

*re G.A.D., Inc.)*, 340 F.3d 331, 335-336 (6th Cir. Mich. 2003) ("Under Rule 60(b)(4), if the rendering court lacked subject matter jurisdiction, the underlying judgment is void, and it is per se an abuse of discretion to deny a movant's motion to vacate"). Second, the Sixth Circuit recently said, in reconsidering whether it had appellate jurisdiction to hear certain matters under the law-of-the-case doctrine, that "'issues such as 'subject matter jurisdiction' or 'appellate jurisdiction' may be 'particularly suitable for reconsideration.'" *K&B Capital, LLC v. Official Unsecured Creditors' Committee (In re LWD, Inc., et. al.)*, 335 Fed. Appx. 523, 526 (6th Cir. 2009).

Lastly, a case out of the Eastern District of Texas supports reconsideration at least insofar as it is directed at subject matter jurisdiction.  In *Landry v. A-Able Bonding Inc.*, 870 F.Supp. 715 (E.D. Tex. 1994), the court faced a Rule 59(e) motion filed by the plaintiff – Landry – as to whether the defendant had falsely imprisoned Landry under Texas state law.   The defendant argued that the court lacked subject matter jurisdiction because there was no diversity of citizenship.  In deciding to reconsider its subject matter jurisdiction, the court said "[w]hile this court concluded in its September 28, 1992 memorandum that plaintiff properly invoked diversity jurisdiction, a challenge at this late juncture certainly is within defendants' rights." *Landry v. A-Able Bonding Inc.*, 870 F.Supp. 715, 717 (E.D.Tex.,1994) (referencing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed. 2d 492 (1982) (although discussing personal jurisdiction as opposed to subject matter jurisdiction, noting that with respect to the latter, "a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings")).  Therefore, for all of these reasons, and notwithstanding the fact that Coolwater failed to raise this plan objection at the confirmation hearing, the court exercises its discretion and grants Coolwater's Motion to Reconsider the Confirmation Order.

Even before we address the question whether the court had subject matter jurisdiction to enter the injunction as stated in the Injunction Paragraph, we must address the *prior* question whether the court has the right to consider the motion for reconsideration. Both the Debtor and P&L Ranch have alleged that Coolwater lacks standing. Standing is a species of justiciability, which acts as a further limit on the exercise of federal judicial power. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (describing standing as an essential attribute of the requirement in Article III that the federal courts consider only actual cases and controversies); *see also Kendall v. National Union Fire Ins. Co.*, 388 F.Supp.2d 755, 758 (N.D.Miss. 2005). At least with regard to constitutional standing, the failure to establish such standing is said to deprive the federal courts of the jurisdiction to hear the merits of the case. *Id.*, citing *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002). Even if constitutional standing is established, a party must still establish prudential standing as well. Constitutional standing requires a showing that (1) an injury in fact that is concrete and particularized has occurred, (2) that the injury was caused by the defendant, and (3) it must be likely that the court can redress the injury.

The court concludes that Coolwater easily satisfies the requirements for constitutional standing. An injunction having the effect of cutting off future litigation against third parties has the effect of depriving the affected party of the economic value of a property right, to wit, the pursuit of a cause of action against the named parties. Nor can it be said that the injunction at issue in this case goes no further than the injunctive language already contained in the Sale Order. The Sale Order injunction is limited to actions by anyone

> against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), *arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, or the Sale*, are forever barred, estopped, and permanently enjoined from asserting *against the Purchasers, their successors or assigns, their property, or the Property, such persons' or entities' Interests*.

This language would not bar litigation against principals of the Debtor, for example, for actions they might have engaged in prior to the filing of the bankruptcy case. What is more, the injury in question, namely, the injunction that cuts off litigation rights, was "caused" by the proponent of the plan. Finally, the court can redress the injury by modifying the confirmation order to alter, limit, or delete the injunction. Thus, the requirements for constitutional standing are met.

At the July Hearing, the court *sua sponte* raised the question whether Coolwater has *bankruptcy* standing to file the Motion to Reconsider, especially in light of *In re Ray*, 597 F.3d 871 (7th Cir. 2010). In *Ray*, the Seventh Circuit had before it an appeal of the bankruptcy court's order dismissing the bankruptcy case filed by a creditor who failed to appear at the hearing in which the case was dismissed. *Id.* at 872-873. Prior to appealing the dismissal, the creditor had filed two emergency motions for reconsideration of the dismissal, both of which were denied by the bankruptcy court. *Id.* at 873. The Seventh Circuit laid out the law thusly:

> Bankruptcy standing is narrower than Article III standing. 'Only a 'person aggrieved' has standing to appeal an order of the bankruptcy court.' 'Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding.' These requirements reflect the need for economy and efficiency in the bankruptcy system. If a party fails to appear at a hearing or object to a motion or proceeding, it cannot expect or implore the bankruptcy court to address the issues raised by the motion or proceeding for a second time. Because 'the requirements of due process outweigh those of judicial efficiency,' however, these prerequisites are excused 'if the objecting party did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken.'
>
> In addition to the appearance and objection prerequisites, '[o]nly those persons affected pecuniarily by a bankruptcy order have standing to appeal that order.' '[A] person has standing to object to an order if that person can 'demonstrate that

the order diminishes the person's property, increases the person's burdens, or impairs the person's rights.'' The purpose of this standard is to insure ''that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal.' 'Indeed, '[c]ourts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding.'

*Id.*, at 874 (citations omitted). The Seventh Circuit overruled the creditor's argument that he had technically appeared and objected to the dismissal because he filed motions to reconsider. *Id.* at 876. The court said that the creditor had presented "no legal authority to support its contention that the filing of a motion for reconsideration cures a failure to appear or object at an earlier stage in the proceedings." *Id.* In any event, due to the nature of motions to reconsider, under which "'[a]rguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited,' [the creditor's] motions do not remedy its initial failure to appear and present its objections to the bankruptcy court." *Id.* For these reasons, the Seventh Circuit ruled that the creditor lacked standing to appeal the dismissal of the underlying bankruptcy case.

Ultimately, although Coolwater may indeed lack standing to <u>appeal</u> the confirmation order, *Ray* does not speak to bankruptcy standing to file motions to reconsider. Indeed, the creditor in *Ray* filed two motions to reconsider, both of which were denied by the bankruptcy court (although whether those motions were denied on the merits or on the creditor's lack of bankruptcy standing is not clear from the Seventh Circuit's opinion). In any event, because one of the issues raised by Coolwater here deals with this court's *subject matter jurisdiction*, which can be raised at any time, and can be considered by a court on a *sua sponte* basis, the court believes that the proper course is to take up the Motion to Reconsider with regard to the question of subject matter jurisdiction.

With regard to the remaining arguments for reconsideration urged by Coolwater, however, the teaching of *Ray* is that reconsideration on those grounds is not proper. Coolwater has not adequately demonstrated that it "did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken." *Ray*, 597 F.3d, at 874. Indeed Coolwater barely touches on that point, an evident acknowledgment that it simply dropped the ball in promptly raising objections to the disclosure statement and plan earlier. The Seventh Circuit recently drew the sound distinction between Rule 59(e) motions that raise subject matter jurisdiction questions and those that simply raise questions that could have been but were not raised at trial. *See York Group, Inc. v. Wuxi Taihu Tractor Co.*, 2011 U.S.App. LEXIS 2171 (7th Cir. Feb. 4, 2011). There, a party challenged the trial court's judgment on grounds that the trial court lacked personal jurisdiction over the party raising the challenge, and that one of the witnesses' testimony should have been disbelieved because the witness held a grudge against him. The party did not appear at the trial, however, and did not raise these arguments at trial. The

16

district court ruled the arguments forfeited for not having been raised at trial, and the circuit affirmed, saying that "the arguments were indeed forfeited ..." *Id.*, at *8. Added the court:

> The effectiveness of service concerns personal jurisdiction, not subject-matter jurisdiction. Personal jurisdiction may be conceded (as subject-matter jurisdiction cannot be) or forfeited by delay in objecting. *See* Fed. R. Civ. P. 12(h)(1); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 703-05, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).

*York Group, Inc. v. Wuxi Taihu Tractor Co.*, 2011 U.S. App. LEXIS 2171, at *9 (7th Cir. Feb. 4, 2011); *see also FDIC v. World University, Inc.*, 978 F.2d 10, 16 (6th Cir. 1992) (motions under Rule 59(e) are "aimed at reconsideration, not initial consideration"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (emphasizing that Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued"); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (ruling that a legal argument that would have limited liability as a matter of law was waived because it was not raised until after the judgment was entered).

Accordingly, the scope of reconsideration will be limited to whether this court had subject matter jurisdiction to grant the relief memorialized in the Injunction Paragraph.

## The Sale Order

Preliminarily, the court notes, in an abundance of caution, that the injunctions contained in the Sale Order, are *not* subject to further reconsideration, as the Sale Order is now a final order. *Republic Supply v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), and the more recent Supreme Court decision of *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 174 L. Ed. 2d 99, 2009 U.S. LEXIS 4537 (U.S., 2009) foreclose any attempt by Coolwater to collaterally attack that decision. Thus, regardless what may be said about the Injunction Paragraph in the Plan, Coolwater may *not* sue the Purchasers, their successors, or assigns, as that relief is already foreclosed by provisions in the Sale Order. To the extent Coolwater is attempting by this motion to argue that the injunctions contained in the Sale Order are also inappropriate, that argument is firmly rejected.

Even if Coolwater's arguments on that point could be raised, the court notes that injunctions under § 363 are completely distinguishable from injunctions in plans and confirmation orders. *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co. f/k/a General Motors Corp., et. al.)*, 428 B.R. 43 (S.D.N.Y. 2010). In *Campbell*, Judge Buchwald noted that "[a]s a threshold matter, while the Second Circuit has not expressly decided the issue, other circuits have held that section 363(m)'s strict limitation of issues on appeal of an unstayed sale order does not distinguish between jurisdictional and non-jurisdictional challenges." *Id.* at 54 (citations omitted). Judge Buchwald went on to say that

Appellants' focus on 'related to' (that is, non-core) jurisdiction is misplaced. The jurisdictional issue here, if any, is the Bankruptcy Court's 'core' or 'arising under' jurisdiction to approve the 363 Transaction and issue the Sale Order. It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, see 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include . . . orders approving the sale of property ."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *cf. also* 28 U.S.C. § 1651 ('All Writs Act'). Moreover, courts have characterized the injunctive authority of bankruptcy courts as 'core' when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the 'free and clear' authority of section 363(f).

*Id.*, at 56-57. Thus, under any scenario, at this procedural juncture, with respect to the sale of the Property, the Purchasers are free from whatever litigation Coolwater is intending to bring in this case, the Sale Order injunction is final and binding, and *Shoaf* prohibits the current motion from being urged as a collateral attack on a final, appealable order.

*Third-Party Injunctions, the Confirmation Order and the Plan*

The only remaining (potential) targets that Coolwater might be considering suing are the Debtor's Partners, as those persons are defined in the Plan.[5] As noted above, 'Partner' is defined as either a Limited Partner or General Partner; 'Limited Partner' includes "any limited partner of the Debtor, including but not limited to, Robert Bartell, Kathleen Bartell Martin and Mark Bartell." *Plan,* ¶¶ A(44), (40). 'General Partner' means "Ewing Gillis, LLC, a Texas limited liability company." *Id.* ¶ A(36). Thus, the court will only consider whether the Injunction Paragraph, as it applies to the Partners, exceeds the court's subject matter jurisdiction.

The seminal Fifth Circuit case on subject matter jurisdiction to issue third party injunctions in a bankruptcy case is *In re Zale*, 62 F.3d 746 (5th Cir. 1995). There, the bankruptcy court had approved a settlement agreement between the debtor and three of the debtor's former directors on the one hand and CIGNA, the primary D&O insurer, on the other. Left out of the settlement agreement was one additional director, Alan Feld, as well as a secondary D&O insurer, NUFIC. The settlement hearing coincided with the debtor's confirmation hearing, and the settlement agreement contained a permanent injunction precluding non-settling parties from suing the settling parties. The non-settling parties affected by this injunction were Feld and NUFIC, who would be barred from suing CIGNA in tort (bad faith) or contract (breach of contract). Notably, the debtor in *Zale* agreed to indemnify CIGNA for any bad faith or other claims brought against it that related to the settlement. Feld and NUFIC appealed the bankruptcy court's approval of the settlement agreement eventually to the circuit.

---

[5] Technically, the Debtor too could be the target of suit but for the injunction, though as a result of the Sale and the subsequent plan, the Debtor entity itself is little more than a distribution agent.

18

The Fifth Circuit, in considering the jurisdiction question, applied the circuit's well-known definition of 'related to' jurisdiction as articulated in *In re Wood*, 825 F.2d 90 (5th Cir. 1987):

> [A] matter is 'related to' the bankruptcy case for § 1334 purposes if ' 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'' Moreover, ' 'an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and … in any way impacts upon the handling and administration of the bankrupt estate.' '

*Id.*, at 752. Cases that find "related to" jurisdiction in the context of third party disputes do so when the subject of the claim "is property of the estate, or because the dispute over the asset would have an effect on the estate." *Id.* at 753. Shared facts between a third-party conflict and a debtor-creditor conflict are said to be insufficient to confer jurisdiction; additionally, judicial economy alone likewise cannot confer jurisdiction. *Id.* at 753-754; *but see In re Morrison*, 555 F. 3d 473, 479 (5th Cir. 2009) (holding that the bankruptcy court had jurisdiction to enter a money judgment in a nondischargeability action, under principles of "tradition and pragmatism," though the matter fell outside the parameters of "related to" jurisdiction as spelled out in decisions such as *Wood*).

With respect to the tort claims, the *Zale* court concluded that the bankruptcy court lacked jurisdiction to enjoin these claims -- *despite* the fact that the debtor had agreed to indemnify CIGNA for any such claims asserted against it. On this point, the court said:

> Although indemnification has brought otherwise unrelated actions within the scope of a bankruptcy court's jurisdiction in other cases, the claims at issue in those cases involved the debtor's behavior, thereby providing a basis for the debtor's obligation that was independent of the indemnification agreement. In those cases, the purpose of the indemnification agreement was to eliminate the necessity for a formal suit against the debtor; therefore, the indemnification agreement satisfied a procedural goal, not a substantive one.

*Id.*, at 755. In other words, in and of itself, the debtor's "consent to the indemnification provision in the settlement … [did not] establish bankruptcy jurisdiction over the unrelated third party claims." *Id.* at 756. Thus, the indemnification provisions did not save the settling parties in *Zale* vis-à-vis the tort claims. The court ruled thusly:

> Because CIGNA, Feld, and NUFIC are not debtors and because the property at issue -- the bad faith claims -- is not property of the estate, the bankruptcy court would have no jurisdiction over the tort claims absent the indemnification provision in the settlement. Moreover, the tort claims do not implicate an independent obligation of Zale in favor of CIGNA. Once we look past the

indemnification agreement, … no substantive basis for indemnification exists. For these reasons, the settlement cannot provide the basis for jurisdiction over the bad faith claims. Accordingly, CIGNA and Zale's attempt to establish jurisdiction fails, and the bankruptcy court had no jurisdiction over Feld's and NUFIC's tort actions against CIGNA.

*Id.*, at 756-757.

As for the contract claims, however, the court found that the bankruptcy court had jurisdiction, because the resolution of these claims had an effect on the estate. "[C]reditors approved the plan on the assumption that some amount of proceeds from CIGNA would flow into the estate." *Id.* at 758. Lawsuits against CIGNA over the policy would tie up the policy assets. *Id.* at 759. Thus, jurisdiction was found to be present.[6]

Judge Barbara Houser applied *Zale's* teachings to a request for a plan injunction in *In re Seatco*, 257 B.R. 469, 476 (Bankr. N.D. Tex. 2001). The first step of her analysis addressed subject matter jurisdiction. Judge Houser concluded that the debtor had established that Kester and the debtor had an "identity of interest" and that "a suit against Kester is essentially suing the debtor." *Id.* at 477. Moreover, she also noted that Kester was vital to the debtor's reorganization:

> Kester is the Debtor's founder, President, and sole shareholder. Kester guaranteed payment of the Debtor's obligations to CIT pursuant to the Guaranty. The evidence is undisputed that if CIT successfully pursued Kester on the Guaranty, Kester would not be able to satisfy CIT's claims and CIT would be entitled to execute against Kester's stock ownership in the Debtor, prompting Kester's resignation as President and the cessation of his involvement in the business. The evidence is also undisputed that if Kester was no longer affiliated with the Debtor, other key managers would leave, as would key customers. The record is clear -- Kester's continued participation and involvement is essential to the Debtor's business operations and will be essential to the Debtor's successful reorganization under the Plan.

*Id.*, at 476.

More recently, Judge Stuart Bernstein addressed a related issue in the bankruptcy case of Drier, LLP, the former New York law firm. *In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.N.Y. 2010). As in *Zale*, Judge Bernstein had before him a settlement containing a broad permanent injunction enjoining third-parties from suing GSO, an investment manager for certain parties that purchased fraudulent notes. After noting that the Second Circuit has become increasingly critical

---

[6] The court proceeded to consider whether the court had the judicial *power* to enter the injunctions in question and concluded that it did, under section 105 of title 11. *See id.* Judicial power questions, however, are not the same as subject matter *jurisdiction* questions.

of third-party injunctions in plans of reorganization,[7]  Judge Bernstein summarized the state of the law in the Second Circuit after the recent spate of litigation in *Manville*:

> Subject matter jurisdiction, however, became the primary focus of the Second Circuit in [Manville II]. … The Court of Appeals focused squarely on the Bankruptcy Court's jurisdiction. *Id.* at 61 ('[T]he bedrock jurisdictional issue in this case requires a determination as to whether the bankruptcy court had jurisdiction over the disputed statutory and common law claims.') The Court had 'little doubt' that the Direct Actions were covered, 'in a literal sense,' by the 1986 injunctions. *Id.* at 67. Nevertheless, relying heavily on the Fifth Circuit's analysis in *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), the Court concluded that the bankruptcy court lacked subject matter jurisdiction to enjoin the Direct Actions.
>
> In assessing a court's jurisdiction to enjoin a third party dispute, the question is not whether the court has jurisdiction over the settlement, but whether it has jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party. *Manville II*, 517 F.3d at 65; *Zale*, 62 F.3d at 755; see *Shearson Lehman Bros., Inc. v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 454 (11th Cir. 1996) ('It is not the language of the settlement agreement that confers subject matter jurisdiction in this case. Rather, it is the 'nexus' of those claims to the settlement agreement . . . that the bankruptcy court must approve . . . .') 'Related to' jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate. *Manville II*, 517 F.3d at 65; *Zale Corp.*, 62 F.3d at 753. A bankruptcy court does not acquire subject matter jurisdiction 'to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate.' *Manville II*, 517 F.3d at 66. Otherwise, 'a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions.' *Id.* (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir 2004)).
>
> The Court explained that in *Manville I*, subject matter jurisdiction existed because MacArthur's [the enjoined party] rights were derivative, MacArthur sought to collect from the proceeds of Manville's insurance policy on the basis of Manville's own conduct, and its claims were inseparable from Manville's own insurance policy, an asset of the Manville estate. *Manville I*, 837 F.2d at 92-93; accord *Manville II*, 517 F.3d at 62. In contrast, the Direct Action claims sought to recover directly from Travelers based upon Travelers' own independent wrongdoing.

---

[7] Judge Bernstein traced the Second Circuit's position on third party injunctions beginning with *MacArthur Co. v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 837 F.2d 89 (2d Cir. 1988) ("Manville I") through *SEC v. Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992), *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), and finishing with the most recent cases: *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008) ("Mansville II"), vacated and remanded on other grounds by 129 S.Ct. 2195 (2009), aff'g in part & rev'g in part *In re Johns-Mansville*, 600 F.3d 135 (2d Cir., Mar. 22, 2010) ("Mansville III").

> *Manville II*, 517 F.3d at 65. They made no claims against Manville's insurance coverage, nor any other asset of the estate, 'nor do their actions affect the estate.' *Id.* Accordingly, the bankruptcy court lacked jurisdiction to enjoin the Direct Actions. *Id.*

*In re Dreier LLP*, 429 B.R. at 130-131. Ultimately, in *Dreier*, Judge Bernstein found that he did have jurisdiction over certain of the claims that the settlement before him sought to enjoin. More particularly, he found that he had jurisdiction over claims that are derivative of the *debtor's* actions: "the Court has the jurisdiction, and may appropriately exercise that jurisdiction, to bar general creditors of these estates from recovering their claims from GSO, where their claims are based on the *debtors' misconduct*, and there is no independent basis for an action against GSO other than its receipt of the transfers from LLP." *Id.* at 133.

In this case, it is simply impossible to tell whether the court has jurisdiction to enter the injunctions against Coolwater's prosecution of claims against the Partners because Coolwater does not state what claims it intends to pursue. On this point, the court agrees with the Debtor that what Coolwater is really asking for here is this court's "interpretation of the Plan and Confirmation Order in a manner that allows Coolwater to pursue unasserted claims against principals of the Debtor." *Debtor Supp. Brief*, at 14-15. As the Debtor notes, the court denied a similar request in a recent case out of El Paso.  In *In re Caspri Corp.*, 2010 Bankr. LEXIS 631 (Bankr. W.D. Tex., Feb. 25, 2010):

> The court can only rule on the causes of action alleged in the pleadings that have been presented to the court for its review. The court cannot speculate (much less rule) on what other causes of action, whether in pleadings not furnished to this court, or in future pleadings, might or might not constitute property of the bankruptcy estate. As noted later in this decision, while this court has exclusive jurisdiction over property of a bankruptcy estate, it does not have exclusive jurisdiction to determine what is or is not property of the estate. *See* 28 U.S.C. § 1334(b). It is hoped that, should future questions arise, this decision will give the state court some guidance in how to resolve those questions.

*Id.*, at *8-9 n.6. Ultimately, the Debtor is quite right when it says that "Coolwater presents no live case, controversy, complaint or pleading for this Court to review and determine the applicability of the injunction imposed under the Plan." *Debtor Supp. Brief*, at 16. The court cannot determine whether it had the subject matter jurisdiction to enter the injunctions contained in the Plan because it cannot tell precisely what is being enjoined. More to the point, if the court is to conduct the jurisdiction analysis described in the foregoing cases, it must know what actions are the subject of the injunction. Coolwater, unhelpfully, offers the court no specifics. Moreover, as Coolwater did not raise objections at the confirmation hearing, the court did not have before it at confirmation a sufficiently developed record to make that analysis there either.

Still, because the issue involves subject matter jurisdiction, the court is not free to simply reject Coolwater's challenge out of hand. A court always has the duty to examine its own subject matter jurisdiction, at least for so long as the matter before the court is not yet final. Thanks to Coolwater's Rule 59 motion, the question of subject matter jurisdiction is still very much alive.

One approach the court could take is suggested by that taken by Judge Michael Lynn in *In re Pilgrim's Pride Corp., et. al.*, 2010 WL 200000 (Bankr. N.D. Tex., Jan. 14, 2010). In *Pilgrim's Pride*, the debtors' plan of reorganization sought to enjoin third party claims against, among others, the debtors' directors and officers. *Id.* at *3. Judge Lynn noted that, under the Fifth Circuit's ruling in *Pacific Lumber*, "the court may not, *over objection*, approve through confirmation of the Plan third-party protections, other than those provided to the Committees, members of the Committees, and the Committees' Professionals." *Id.* at *5 (emphasis added). However, Judge Lynn also noted that he did not believe that *Pacific Lumber* precludes the court "from retaining jurisdiction over at least some suits against third parties which would have been covered by the Plan's third-party protections." *Id.* at *5. Accordingly, Judge Lynn held:

> Debtors, serving through their management and professionals as debtors in possession, acted in the capacity of trustees for the benefit of their creditors. In that capacity, Debtors operated their business pursuant to Code § 1108. To the extent Debtors acted in the Chapter 11 Cases, other than in bad faith, pursuant to the authority granted by the Code or as directed by court order, Debtors' management and professionals presumptively should not be subject to liability. In order to ensure that such persons are not improperly pursued, it is appropriate that this court should channel to itself claims that may be asserted against Debtors' management (including their boards of directors and Chief Restructuring Officer) and professionals based upon their conduct in pursuit of their responsibilities during the Chapter 11 Cases.
>
> ...
>
> [p]rotecting the members of management of a debtor in possession and the professionals advising them for good-faith actions taken under the authority of the Code or pursuant to orders of the court … would seem consistent with the case law that equates a debtor in possession to a trustee. The court reads *Pacific Lumber* to prohibit exculpatory language that would bar such actions outright, but it does not understand that the Court of Appeals meant to prevent bankruptcy courts from retaining jurisdiction as the exclusive forum for deciding cases raising issues pertaining to the performance by a debtor in possession of its duties under sections 1107 and 1106 of the Code.

*Id.* (citations omitted). The court in *Pilgrims Pride* found that it had subject matter jurisdiction over claims regarding the debtors' management team for actions taken during the bankruptcy. For similar reasons, this court finds it has subject matter jurisdiction to hear any claims that Coolwater (or any other party, for that matter) might assert against the Partners for actions related to the management of the Debtor that were taken during the Debtor's bankruptcy case.

Those claims can thus also be the subject of the Injunction Paragraph, at least as a matter of subject matter jurisdiction (the only issue the court is considering in this Rule 59(e) motion).

There may be other actions that the court also has the subject matter jurisdiction to bar as well. Actions that belong to the estate, for example, are actions whose pursuit the court would have the subject matter jurisdiction to limit to the estate or its proper successors pursuant to a plan. *See Dreier*, *supra*. The injunction of the pursuit of actions in order to prevent undermining the efficacy of the plan and its distribution scheme might also be within the court's subject matter jurisdiction. *See id*. Finally, an injunction that falls within the ambit of section 105 is one that the federal courts have subject matter to issue. *See Long-Term Credit Bank v. Cent. States, Southeast and Southwest Areas Pension Fund (In re AppleTree Mkts., Inc.)*, 1999 U.S. Dist. LEXIS 23374, at *57-58 (S.D. Tex. Feb. 19, 1999).

Although moot in light of the court's ruling above, the court briefly addresses Coolwater's argument that, despite the fact that it failed to appear at the confirmation hearing and failed to object to the Injunction Paragraph, it is up to <u>this</u> court to police the terms of the Plan, and deny confirmation if there was a provision that might have been controversial. Coolwater's argument on this point is nothing less than an attempt to deflect the blame for its own failures in this case. Moreover, Coolwater cites to irrelevant legal authority to support its position. In particular, Coolwater invokes *In re Francisco Espinosa*, 130 S.Ct. 1367, 1376 (2010) for the proposition that, notwithstanding the lack of an objection to the Plan, the court should have *sua sponte* stricken the Injunction Paragraph, since it was "in direct conflict with Bankruptcy Code provisions." *Coolwater Supp. Brief*, at 8.

In the first place, as Coolwater's counsel admitted at the July Hearing, it cited to *dicta* in the *Espinosa* case. Moreover, the Injunction Paragraph is not in direct conflict with the Bankruptcy Code. As Coolwater well knows, the Fifth Circuit does allow permanent injunctions <u>so long as there is consent</u>. Without an objection, this court was entitled to rely on Coolwater's silence to infer consent at the confirmation hearing, especially since Coolwater had been so active in this case. *See In re Pacific Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009); *In re Pilgrim's Pride Corp.*, 2010 WL 200000, at *5 (Bankr. N.D.Tex. Jan. 14, 2010).

**Conclusion**

The court accordingly concludes that it had the subject matter jurisdiction to enter the Injunction Paragraph, to the extent that it enjoins Coolwater's pursuit of causes of action that are or may be property of the estate. It also had the subject matter jurisdiction to enjoin actions relating to the prosecution of this bankruptcy case during the pendency of the case. The court also has the subject matter jurisdiction to interpret and enforce the Plan's provisions, including the provisions of the Injunction Paragraph. Because Coolwater has not indicated to the court what causes of action it intends to pursue, it is not possible at this point to determine whether those actions would or would not be appropriately subject to the Injunction Paragraph as a matter of subject matter jurisdiction. Coolwater is certainly free to seek affirmative declaratory relief

from this court to disclose what suits it intends to bring, and to obtain a ruling whether such actions would or would not be within the subject matter jurisdiction of this court to enjoin.

A separate order will be entered consistent with this decision.

###